## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEW LEAF DATA SERVICES, LLC, | |
| Plaintiff, | Civil Action No. 3:19-cv-01234-JCH |
| v. | JURY TRIAL DEMANDED |
| HUMBOLDT MARIJUANA EXCHANGE, LLC, | |
| Defendant. | |

### FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT

Plaintiff New Leaf Data Services, LLC ("New Leaf" or "Plaintiff") for its Complaint against Defendant Humboldt Marijuana Exchange, LLC ("Humboldt" or "Defendant"), alleges as follows:

### STATEMENT OF THE CASE

1.      This is an action for federal trademark infringement, false designation of origin, and unfair competition in violation of the Federal Lanham Act, 15 U.S.C. § 1051 *et seq*., cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), common law trademark infringement, state unfair competition in violation of the Connecticut Unfair Trade Practices Act, and common law commercial disparagement and defamation against Defendant for improper and unauthorized commercial use and exploitation of New Leaf's trademarks on or in connection with the offer for sale, sale, promotion, and advertising of services.

2.      New Leaf hereby seeks, *inter alia*, (1) a temporary restraining order and preliminary injunction against Defendant's continued unauthorized, improper and willful commercial use and exploitation of New Leaf's trademarks; (2) a permanent injunction against

Defendant's continued unauthorized, improper and willful commercial use and exploitation of the New Leaf trademarks; and (3) all damages arising from Defendant's past and present infringement, including all statutory damages, and New Leaf's attorneys' fees and costs for having to bring this suit to enforce its rights.

**PARTIES**

3.      New Leaf is a Limited Liability Company, organized under the laws of Connecticut, having its principal place of business at 1177 High Ridge Road, Stamford, CT 06905.

4.      Upon information and belief, Defendant is a Limited Liability Company, organized under the laws of California, having an address at 1574 G. Street, #E Arcata, CA 95521.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) over claims of federal trademark infringement, false designation of origin, and unfair competition, which arise under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* This court also has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) over claims of cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over state law claims. The Court's authority to award the requested equitable relief can be found at least in 15 U.S.C. § 1116(a), 28 U.S.C. § 1651(a), and this Court's inherent equitable power.

6.      Upon information and belief, this Court has jurisdiction over Defendant by virtue of its systematic and continuous contacts with Connecticut, and because Defendant has (1) transacted and done business in Connecticut, (2) solicited consumers in this District, (3) offered

2

to sell or have sold goods in this District, (4) committed tortious acts within the state, (5) committed tortious acts outside the state causing injury within the state and (a) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (b) expects or reasonably expects its tortious acts to have consequences in the state and derives substantial revenue from interstate or international commerce, and (6) has websites that are accessible in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the wrongful events giving rise to this action took place in this District and New Leaf has suffered harm in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A. New Leaf's Trademarks

8.      New Leaf is a leading provider of financial, business, and industry data for the North American cannabis and hemp markets. New Leaf's services are offered to public and private organizations and financial institutions.

9.      New Leaf is the owner of several federal trademark registrations, including registrations for HEMP BENCHMARKS (Reg. No. 5079914), and CANNABIS BENCHMARKS (Reg. No. 4861347) (collectively "the New Leaf Marks") in International Class 35 for market research and business analyses. *See* **Exhibit A**, for true and correct copies of the New Leaf trademark registrations, which are incorporated herein by reference.

10.     New Leaf possesses all rights, titles and interests in and to the federal trademark registrations for the New Leaf Marks based on the continuous use of the marks in the U.S. and worldwide commerce by New Leaf, since 2015 for CANNABIS BENCHMARKS and 2016 for

HEMP BENCHMARKS in connection with the aforementioned services.

11.     New Leaf's use of the HEMP BENCHMARKS mark has continued uninterrupted since as early as 2016 and use of the CANNABIS BENCHMARKS trademark has continued uninterrupted since as early as 2015. New Leaf has never abandoned its use of the New Leaf Marks for the aforementioned services.

12.     New Leaf maintains two active websites located at www.cannabisbenchmarks.com since at least as early as May 2015 and www.hempbenchmarks.com since at least as early as July 2018 on which it uses the New Leaf Marks. *See* **Exhibit M**, for screenshots of the hempbenchmarks.net and cannabisbenchmarks.com homepages.

13.     The New Leaf Marks are distinctive trademarks to both the public and those in the trade in connection with New Leaf's products and services. The New Leaf Marks serve primarily as designators of origin of products and services originating from, or sponsored, or licensed by New Leaf.

14.     As a result of the widespread use and display of the New Leaf Marks, both the public and those in the trade use the New Leaf Marks to identify and refer to New Leaf's products and services.

> **B.     Humboldt's Infringing Activities and Bad Faith Conduct**

15.     Upon information and belief, Humboldt is a marijuana stock exchange that purports to allow brokers and professional traders to trade virtual indoor, outdoor, greenhouse, and materials used in cannabis commodities.

16.     Upon information and belief, Humboldt owns, operates, and manages the interactive website, www.humboldtmarijuanaexchange.com ("Humboldt Website") where it

promotes, advertises, distributes, offers for sale, and sells its marijuana stock exchange services. Humboldt's website is publically accessible to consumers in Connecticut and those throughout the U.S. *See* **Exhibit B**, for screenshots from the Humboldt Website.

17. Upon information and belief, Humboldt owns, operates, and manages the interactive website, www.amercanex.us ("AmercanEX.US Website") where it promotes, advertises, distributes, offers for sale, and sells its marijuana stock exchange services. The AmercanEX.US Website is publically accessible to consumers in Connecticut and those throughout the U.S. *See* **Exhibit C**, for screenshots from the AmercanEX.US Website that show an ownership by Humboldt, including a direct link to the Humboldt Website Terms and Conditions.

18. Upon information and belief, Humboldt owns, operates, and manages the interactive website, www.nacsdaq.com ("Nacsdaq Website") where it promotes, advertises, distributes, offers for sale, and sells its marijuana stock exchange services. The Nacsdaq Website is publically accessible to consumers in Connecticut and those throughout the U.S. *See* **Exhibit D**, for screenshots from the Nacsdaq Website that show an ownership by Humboldt, including a direct link to the Humboldt Website Terms and Conditions.

19. Upon information and belief, Humboldt owns, operates, and manages the interactive website, www.californiacannabiscommodityexchange.net ("California Commodity Website") where it promotes, advertises, distributes, offers for sale, and sells its marijuana stock exchange services. The California Commodity Website is publically accessible to consumers in Connecticut and those throughout the U.S. *See* **Exhibit E**, for screenshots from the California Commodity Website that show an ownership by Humboldt, including a direct link to the Humboldt Website Terms and Conditions.

20.     Upon information and belief, Humboldt owns, operates, and manages the domains www.cannabisbenchmarks.net and www.hempbenchmarks.net (collectively "the Infringing Domains.")

21.     Upon information and belief, long after New Leaf's adoption and first use of the New Leaf Marks in commerce, Humboldt purchased the Infringing Domains to confuse potential consumers and profit off of the New Leaf Marks. When a consumer attempts to visit the Infringing Domains, they are automatically redirected to www.humboldtmarijuanaexchange.com. *See* **Exhibit F** for screenshots of these redirections.

22.     Upon information and belief, these redirections are intentional and in bad faith to drive consumers to Humboldt's Website when they were looking for New Leaf's websites.

23.     Upon information and belief, users of Humboldt Marijuana Exchange are confused by the automatic redirection of www.hempbenchmarks.net to www.humboldtmarijuanaexchange.com as indicated on message boards located on the Humboldt Website. *See* **Exhibit G**, for screenshots of posts on these message boards about the redirection of www.hempbenchmarks.net.

24.     The Nacsdaq Website is prominently displaying the New Leaf Marks to advertise, promote, and market the websites. *See* **Exhibit D**.

25.     In June 2019, New Leaf discovered that the www.hempbenchmarks.net domain was automatically redirecting to www.humboldtmarijuanaexchange.com.

26.     In July 2019, New Leaf discovered that the www.cannabisbenchmarks.net domain was automatically redirecting to www.humboldtmarijuanaexchange.com.

27.    On June 27, 2019, New Leaf sent a letter to Humboldt regarding its use of the HEMP BENCHMARKS mark and the redirecting of hempbenchmarks.net to the Humboldt Website.

28.    On July 1, 2019, New Leaf received a response from Humboldt in which Humboldt offered to sell New Leaf the hempbenchmark.net domain for $999.00 through GoDaddy.

29.    The GoDaddy sale page for the hempbenchmarks.net domain contains a seller's description that states "hempbenchmarks is a registered trademark as seen on hempbenchmarks.com."  *See* **Exhibit H**, for screenshots from the domain sale page for hempbenchmarks.net.

30.    On July 2, 2019, New Leaf, through its attorneys, sent Humboldt a letter placing it on notice of its rights and long term use and ownership of the HEMP BENCHMARKS mark, as well as demanding that Humboldt cease and desist from all use of the HEMP BENCHMARKS mark in any infringing manner. *See* **Exhibit I** for a true and accurate copy of the correspondence sent to Humboldt on July 2, 2019.

31.    On July 17, 2019, New Leaf, through its attorneys, sent Humboldt a follow up letter including claims related to the CANNABIS BENCHMARKS mark. *See* **Exhibit J** for a true and accurate copy of the correspondence sent to Humboldt on July 17, 2019.

32.    On July 22, 2019, New Leaf received a reply from Humboldt in which Humboldt stated its intentions not to comply with any of New Leaf's demands. *See* **Exhibit K** for a true and accurate copy of the correspondence received from Humboldt on July 22, 2019.

33.    On August 13, 2019, Humboldt posted a defamatory statement on the Humboldt Website that contained false and baseless allegations regarding New Leaf employees. *See*

**Exhibit L** for a true and accurate copy of the statement posted on the Humboldt Website on August 13, 2019.

34.    Upon information and belief, Humboldt posted the defamatory statement in retaliation for New Leaf's August 8, 2019 letter to Humboldt regarding the initiation of this Action.

35.    To date, Humboldt continues to use and prominently display on its website, without authorization from New Leaf, the New Leaf Marks in connection with its services.

36.    Humboldt is not now, nor has it ever been associated, affiliated, or connected with, or endorsed or sanctioned by New Leaf.

37.    New Leaf is not able to monitor, enforce or maintain its quality control standards on the services Humboldt offers for sale and is selling.

38.    Humboldt's use of the New Leaf Marks in the manner described herein creates the wrongful impression that Humboldt is authorized, sponsored, or approved by New Leaf even though it is not. This confusion causes irreparable harm to New Leaf and the New Leaf Marks.

39.    Upon information and belief, Humboldt had been unjustly enriched by the illegal use and misappropriation of the New Leaf Marks for its own financial gain. Additionally, upon information and belief, Humboldt has unfairly benefited and profited from New Leaf's outstanding reputation, as well as its significant advertising and promotion of its services and the New Leaf Marks.

40.    Upon information and belief, Humboldt's acts are willful and deliberate. Therefore, this case constitutes an exceptional case under 15 U.S.C. § 1117(a).

41.    Upon information and belief, Humboldt's acts will continue unless enjoined by this Court.

42.     New Leaf has no adequate remedy at law.


**COUNT I**
**Trademark Infringement Under Section 32 of the Lanham Act, 15 U.S.C. § 1114**

43.     New Leaf repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

44.     The New Leaf Marks and the goodwill of the business associated therewith in the U.S. are of great and significant value, and are highly distinctive of the services associated with the New Leaf Marks.

45.     Humboldt's use of the New Leaf Marks trades upon the goodwill associated with the marks.

46.     Humboldt's actions described above have caused and are likely to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of Humboldt's services, and are likely to deceive the public into believing that the services offered and sold by Humboldt are sponsored or authorized by New Leaf, all to the damage and detriment of New Leaf's reputation, goodwill, and sales.

47.     Humboldt's actions constitute trademark infringement of the New Leaf's Marks, the full extent of which is presently unknown but is substantial. This has caused damage to New Leaf and the substantial business and goodwill symbolized by the New Leaf Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

48.     Humboldt's actions described above, including the unauthorized use of the New Leaf Marks in interstate commerce, have caused, and unless restrained will continue to cause, great and irreparable injury to New Leaf, to the New Leaf Marks, and to the business and goodwill represented thereby, leaving New Leaf with no adequate remedy at law.

49.     Defendant's infringement will continue unless enjoined by the Court.

**COUNT II**
**False Designation of Origin and Unfair Competition Under Section 43 of the**
**Lanham Act, 15 U.S.C. § 1125**

50.     New Leaf repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

51.      The New Leaf Marks are entitled to protection under Section 43(a) of the Lanham Act.

52.     Upon information and belief, Humboldt has used, is using, and intends to continue using now and in the future in commerce the New Leaf Marks for the offer and provision of goods and services in such a way that has and will continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of Humboldt with New Leaf.

53.     Upon information and belief, Humboldt's use of the New Leaf Marks for the offer and provision of goods and services has likely caused and will continue to cause confusion of the relevant public and trade.

54.     Humboldt's use of the New Leaf Marks trades upon the associated goodwill.

55.     New Leaf has been and will continue to be damaged by the confusion, mistake, and deception caused by Humboldt's use of the New Leaf Marks.

56.     Any defect, objection to, or fault found with Humboldt's goods and/or services sold or provided under the New Leaf Marks would necessarily reflect on and seriously injure the reputation New Leaf has established for its marks and business.

57.     New Leaf does not and has never consented to or authorized Humboldt's adoption or commercial use of the New Leaf Marks for the aforementioned goods and services. Humboldt

therefore has infringed and is infringing the New Leaf Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

58.     Upon information and belief, at all times relevant to this action, including when Humboldt first started to use the New Leaf Marks and commenced commercial use of the New Leaf Marks on the aforementioned goods and services, Humboldt knew of the prior adoption and widespread commercial use of the New Leaf Marks, and Humboldt knew of the valuable goodwill and reputation acquired by New Leaf in connection with the New Leaf Marks. Humboldt's infringement of the New Leaf Marks is therefore willful.

59.     Upon information and belief, Humboldt, even after being placed on notice of New Leaf's rights, continues to use the New Leaf Marks in commerce. Humboldt's infringement of the New Leaf Marks is therefore willful.

60.     Upon information and belief, Humboldt's use of the New Leaf Marks has caused confusion, mistake, and deception by purchasers as to the source of origin of Humboldt's infringing goods. Humboldt's use and promotion of marks confusingly similar to New Leaf's Marks to identify Humboldt's products will likely cause confusion or cause mistake, or deceive as to the affiliation, connection, or association of New Leaf with Humboldt, or as to the origin, sponsorship or approval by New Leaf of Humboldt's goods and services.

61.     Humboldt's use of the accused marks constitutes a false description of origin, false or misleading description of fact, or false or misleading representation of fact as those terms are used in Section 43(a) of the Lanham Act.

62.     Humboldt's infringement will continue unless enjoined by the Court.

**COUNT III**
**Common Law Trademark Infringement**

63.     New Leaf repeats and re-alleges each and every allegation in the foregoing

11

paragraphs as if fully set forth herein.

64.     This claim is against Humboldt for common law trademark infringement.

65.     In addition to the federal registrations owned by New Leaf, as set forth above, the New Leaf Marks enjoy common law rights in Connecticut and throughout the United States. These rights are senior and superior to any rights which Humboldt may claim.

66.     Humboldt's use of the New Leaf Marks is unauthorized and intentionally designed to mimic the New Leaf Marks so as to cause confusion regarding Humboldt's affiliation, association and/or sponsorship by New Leaf and likely to cause confusion that Humboldt's services are approved by New Leaf, all to the detriment of New Leaf.

67.     Humboldt's infringement will continue unless enjoined by the Court.

**COUNT IV**
**Trademark Infringement and Unfair Competition under Connecticut Law**

68.     New Leaf repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

69.      Humboldt's acts as described above constitute unfair competition in violation of Conn.Gen.Stat. § 42-110 (the Connecticut Unfair Trade Practices Act).

70.     Humboldt's use of the New Leaf Marks is likely to and does permit Humboldt to palm off its goods and services as those authorized or sponsored by New Leaf, all to the detriment of New Leaf and the unjust enrichment of Humboldt. Humboldt's use of the New Leaf Marks, in a manner only authorized for New Leaf itself or its authorized licensees, further misrepresents to the consuming public that Humboldt's goods and services are authorized or sponsored by New Leaf and/or that it is associated and/or affiliated with New Leaf.

71.     Humboldt's acts permit and accomplish confusion, mislead and deceive the public as to the source of Humboldt's goods and services, permit and accomplish palming off of

Humboldt's goods and services as authorized by New Leaf, and falsely suggest a connection

with New Leaf, thus constituting unfair competition with New Leaf in violation of Connecticut

law. These acts have caused and will continue to cause New Leaf irreparable harm unless

enjoined by this Court.

72.    New Leaf has no adequate remedy at law.

73.    Humboldt's infringement will continue unless enjoined by the Court.

## COUNT IV
## Cybersquatting Under 15 U.S.C. § 1125(d)

74.    New Leaf repeats and re-alleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

75.    Upon information and belief, Defendants have a bad faith intent to profit from the

registration and use of the Infringing Domains by creating an association with the New Leaf

Marks as to source or sponsorship.

76.    The top-level domain name portions of the Infringing Domains are exact to,

confusingly similar to, and dilute the distinctive qualities of the New Leaf Marks.

77.    New Leaf has been damaged by Humboldt's unlawful use of the Infringing

Domains and will suffer irreparable harm.

78.    Humboldt's acts, as stated above, are in violation of the Anticybersquatting

Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

## COUNT V
## Commercial Disparagement and Defamation

79.    New Leaf repeats and re-alleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

80.    In response to being notified of this Action, Humboldt published a defamatory

statement on the Humboldt Website to current and prospective New Leaf consumers, and New

Leaf's reputation and the reputation of the services associated with the New Leaf Marks suffered as a result of the statement.

81.     These acts have caused and will continue to cause New Leaf irreparable harm unless enjoyed by this Court.

## **PRAYERS FOR RELIEF**

WHEREFORE, New Leaf prays for judgment as follows:

A.     That judgment be entered in favor of New Leaf and against Humboldt on each and every Count in this Complaint;

B.     For entry of an order and judgment enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all persons in active concert or participating with any of them, during the pendency of this action and permanently thereafter from:

> i.     advertising, marketing, promoting, selling, offering for sale or authorizing any third party to advertise, market, promote, sell and offer for sale any goods or services bearing the New Leaf Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the New Leaf Marks;
>
> ii.     engaging in any activity that infringes New Leaf's rights in the New Leaf Marks;
>
> iii.     engaging in any activity that constitutes unfair competition with New Leaf;
>
> iv.     using or authorizing any third party to use any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to

14

deceive the trade or public into believing that Defendant's products or activities are in any way sponsored, licensed or authorized by or affiliated or connected with New Leaf;

    v.    making or displaying any statement, representation, or depiction that is likely to lead the public or those in the trade to believe that the products or services promoted, offered, or sponsored by Defendant are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with New Leaf, or that New Leaf's products and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

    vi.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the New Leaf Marks or any other mark that infringes or is likely to be confused with the New Leaf Marks, or any products of New Leaf; and

    vii.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in above subparagraphs;

C.    Direct Defendant to file with the Court and serve on counsel for New Leaf within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement setting forth in detail the manner and form in which Defendants have complied with

any injunction which the Court may enter in this action;

D.     Direct Defendant to transfer the Infringing Domains and any unknown, confusingly similar domains to those of the New Leaf Marks to New Leaf;

E.     Direct Defendant to account to New Leaf for Defendant's profits and order that New Leaf recover its damages arising out of the acts of deception and infringement described above, at a sum equal to three times such profits or damages (whichever is greater);

F.     Award New Leaf punitive damages on account of Defendant's gross, wanton, willful, and malicious conduct;

G.     Direct Defendant to deliver up for destruction any and all products, circulars, price lists, labels, brochures, business cards, signs, prints, packages, wrappers, pouches, advertising matter, promotional materials, and other materials in the possession or control of Defendant bearing the New Leaf Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the New Leaf Marks;

H.     Direct any domain registrar of the domain names for Defendant's Websites, and any other domain names used by Defendant to engage in their infringement of the New Leaf Marks, to identify the owners and operators of the websites, and to lock and transfer the domain names to New Leaf's control so they may no longer be used for illegal purposes.

I.     Award New Leaf its reasonable attorney's fees along with the costs and disbursements incurred herein as a result of Defendant's intentional and willful infringement, pursuant to 15 U.S.C. § 1117, 15 U.S.C. § 1125, the CUTPA, and other applicable law, and restitution and/or disgorgement of all revenue, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of its unlawful and/or fraudulent actions and practices;

J.     Award New Leaf such other and further relief as the Court deems just and proper or otherwise provided by law.

## JURY DEMAND

New Leaf demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Date: August 20, 2019

*/s/ Stephen F.W. Ball, Jr*     .
Stephen F.W. Ball, Jr., ct28234
Whitmyer IP Group LLC
600 Summer Street
Stamford, CT 06901
Tel:  203-703-0800
Fax:  203-703-0801
Email: litigation@whipgroup.com
        sball@wihpgroup.com


ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 20, 2019, a copy of the foregoing First Amended Complaint was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

I hereby further certify that the foregoing document is being served upon Defendant via service of process pursuant to Fed. R. Civ. P. 4.


<u>August 20, 2019</u>                              */s/ Joan M. Burnett*